Sarah R. London (State Bar No. 267083)
Simon Grille (State Bar No. 294914)
Andrew Kaufman (*Pro Hac Vice* forthcoming)
Isabel Velez (State Bar No. 359574)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: slondon@girardsharp.com
Email: sgrille@girardsharp.com
Email: akaufman@girardsharp.com
Email: ivelez@girardsharp.com

*Attorneys for Plaintiff Jane Doe GS-0003*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE GS-0003,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Jane Doe GS-0003 brings this action against Defendant Apple Inc. to recover damages arising from the severe injuries she suffered because of Apple's conduct in creating, designing, marketing, and distributing its AirTag product. Plaintiff alleges as follows:

## I. INTRODUCTION

1. This action seeks to hold Defendant Apple accountable for its continuing failure to adequately protect members of the public from being stalked with its AirTag and for facilitating the tracking and stalking of Plaintiff.

2. In 2021, Apple released this product with knowledge that it could—and *would*—be purchased and used by abusive, dangerous individuals, to track, coerce, control, and otherwise endanger and abuse innocent victims.

3. And, in 2021, Apple also knew that adequate safeguards had not yet been implemented. Nonetheless, the AirTag was made available to the public. Since that time, Apple has quietly introduced new features that attempt to curtail the dangers of a product that is now five years old. These new features fail to adequately address known defects of the AirTag.

4. Apple concedes that even today, AirTags remain a profound risk to people like Plaintiff. In response to an April 2, 2024, report aired in the United Kingdom on ITV News, titled *AirTags becoming 'weapon of choice of stalkers' as GPS tracker cases rocket by 317%*, Apple made the following statement: "We have identified even more ways we can update Airtag safety warnings and help guard against further unwanted tracking."[1]




AirTags becoming 'weapon of choice of stalkers' as GPS tracker cases rocket by 317% | ITV News

Fig. 1 (April 2, 2024)

[1] Available at https://www.youtube.com/watch?v=TBhYdgt1FhE

5. This promise of future, unspecified action comes far too late for Plaintiff, who already has been harmed in life-altering ways by Apple's recklessness.

6. Indeed, Apple has always known that any safeguards it purported to build into AirTags would only, in Apple's own words "deter as opposed to prevent malicious use."

7. Each year, an estimated 13.5 million people are victims of stalking in the United States, with nearly one in three women and one in six men experiencing stalking at some point in their lifetime.[2]

8. Apple's AirTags have become a critical part of this ecosystem. From April 20, 2021, to April 5, 2024, Apple received over 40,000 stalking reports, over 1,000 complaints per month on average.

9. Stalking can manifest in a host of ways, most often through unwanted and repeated behaviors such as phone calls, texts, visits, gifts, internet posts, threats, theft, break-ins, or any other series of acts that would cause fear in a reasonable person. Regardless of the acts the stalker employs, the common theme of stalking behavior is the fear elicited in the victim.

10. This fear undermines and erodes a victim's autonomy and drastically disrupts their day-to-day life. One in eight employed stalking victims miss time from work because of their victimization and more than half lose more than five days of work.[3] One in seven stalking victims move as a result of their victimization.[4] Unsurprisingly, stalking victims suffer much higher rates of depression, anxiety, insomnia, and social dysfunction than people in the general population.[5]

11. Technology has increased the tools available to a stalker, with burner phones or call blocking software providing anonymity, and free email services and social media platforms providing a limitless vector for harassing electronic messages and posts.

12. One of the most dangerous and frightening technologies employed by stalkers is the use of real-time location information to track victims. These technologies allow stalkers to follow their victims'

---

[2] Stalking Prevention Awareness and Resource Center (SPARC), Stalking Fact Sheet (available at https://www.stalkingawareness.org/wp-content/uploads/2019/01/SPARC_StalkngFactSheet_2018_FINAL.pdf)

[3] Baum, K., Catalano, S., & Rand, M. (2009). Stalking Victimization in the United States. Washington, DC: Bureau of Justice Statistics

[4] *Id.*

[5] Blaauw, E., Arensman, E., Winkel, F.W., Freeve, A., & Sheridan, L. (2002). The Toll of Stalking. Journal of Interpersonal Violence 17(1): 50-63

movements in real time and to undo any attempt on the part of the victim to evade or hide from the stalker. If one's location is constantly being transmitted to an abuser, there is no place to run.

13. One of the products that has revolutionized the scope, breadth, and ease of location-based stalking is the Apple AirTag. Introduced in April 2021, this device is roughly the size of a quarter, and its sole purpose is to transmit its location to its owner.

14. What separates the AirTag from any competitor product is its unparalleled accuracy, ease of use in Apple's existing suite of products and ecosystem, and affordability. With a price of just $29, it has become the weapon of choice of stalkers and abusers.

15. The AirTag works by emitting signals that are detected by Bluetooth sensors on the hundreds of millions of Apple products across the United States. These sensors comprise Apple's "FindMy" network. When a device on the network detects a signal from the missing device, it reports that missing device's location back to Apple, which in turn reports it to the owner.

16. The ubiquity of Apple products, and their constituency in the FindMy network, means that an AirTag can more reliably transmit location data than any competitor. Indeed, in all metropolitan areas, and even many rural areas, one is never more than 100 yards away from an Apple device. Thus, one is never more than 100 yards away from having location data transmitted back to Apple through its vast and populous ecosystem.

17. None of this came as a surprise to Apple. Prior to and upon the AirTag's release, advocates and technologists urged the company to rethink the product and to consider its inevitable use in stalking. In response, Apple heedlessly forged ahead, dismissing concerns and pointing to mitigation features that it claimed rendered the devices "stalker proof."

18. But Apple's internal emails acknowledge that the company "should have consulted domestic abuse organizations on the unwanted tracking policy before shipping, and from these organizations' point of view, this is not a rare event."

19. The concerns of these organizations—whom Apple did not consult—were well founded. Immediately after the AirTag's release, and consistently since, reports have proliferated of people finding AirTags placed in their purses, in or on their cars and even sewn into the lining of their clothes by stalkers

and abusers in order to track their whereabouts. As noted above, Apple itself received *over 1,000 reports per month* from victims over a three-year period.

20. The consequences have been as severe: victims have been tracked by perpetrators using an AirTag and murdered.

21. Its "stalker proof" protections exposed as totally inadequate, Apple has spent the last five years scrambling to address its failures in protecting people from unwanted, dangerous tracking. In those five years, Apple has released updates that proport to make the device "stalker proof," however, most if not all, of these failures to date persist, and Apple continues to find itself in the position of *reacting* to the harms its product has unleashed, as opposed to designing the AirTag to prevent these known and foreseeable harms. As one commentator observed: "You wouldn't allow a car to come to mass-market without having vigorous testing, so why are we allowing smart tech to just be released and then fixing safety features later?"[6]

22. Plaintiff is a mother who was tracked by a concealed AirTag that her ex-husband hid in the trunk of her car.

23. Before discovering that she was being tracked with an AirTag, Plaintiff's ex-husband showed up to Plaintiff's place of work and apartment while she was there.

24. It was not until approximately November 3, 2025 that Plaintiff's Android phone received a notification that she was in proximity to an unknown AirTag.

25. After searching her vehicle, Plaintiff was able to locate the AirTag.

26. Plaintiff learned that this AirTag was registered to her ex-husband's phone.

27. As a result of being tracked by a concealed AirTag, Plaintiff has experienced significant emotional distress. She suffers from anxiety and feels like she has lost her autonomy. She is constantly nervous that someone is watching her, and she is terrified that her ex-husband will continue to stalk her and escalate his behavior. Tragically, what happened to Plaintiff is far from an isolated event. Plaintiff is

[6] Ellie Fry, Inside chilling rise of AirTag stalking as Apple device is branded 'gift to abusers', The Mirror (Apr. 24, 2023) (available at https://www.mirror.co.uk/tech/inside-chilling-riseairtag-stalking-29746435)

just one of countless individuals whose lives have been altered as a result of Apple's defectively designed AirTag.

## II. PARTIES

28. Plaintiff Jane Doe GS-0003 is a citizen of the State of Tennessee, domiciled in Shelby County. Plaintiff proceeds under the pseudonym Jane Doe GS-0003 because disclosure of her name would jeopardize her safety.

29. Defendant Apple Inc. is a corporation organized under the laws of the State of California, with its principal place of business in Cupertino, California, and is therefore a citizen of California for purposes of diversity jurisdiction. Apple is an American multinational technology company. Among Apple's flagship items of consumer electronics is the AirTag, and Apple generally oversees all aspects of this device, including but not limited to its design, manufacture, marketing, and technical support and maintenance.

## III. JURISDICTION AND VENUE

30. This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332(a)(1). Plaintiff and Defendant are citizens of different States, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

31. This Court has personal jurisdiction over Defendant because its principal place of business is in this District, because it has contacts with this District that are so continuous and systematic that it is essentially at home in this State, and because Defendant's contacts with this District relate to the claims alleged in this lawsuit. Apple maintains its principal place of business in the County of Santa Clara.

32. Venue is proper in this District under 28 U.S.C. Section 1391 because Apple resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in Santa Clara County.

## IV. FACTUAL ALLEGATIONS

33. The AirTag was introduced in April 2021 as a standalone product. Roughly the size of a US quarter, it is a tracking beacon, meant to help consumers locate other objects, such as keys or purses.[7]



Fig. 2



Fig. 3

34. AirTags are not connected to the Internet. Instead, they utilize Bluetooth technology, emitting Bluetooth signals to any Apple device that is nearby. In turn, those Apple devices report where an AirTag has last been seen.[8] Once an AirTag is identified as being near an Apple device or multiple Apple devices, the devices act as crowdsourced beacons, pinging with the AirTag to locate it for the AirTag's owner. The owner sees the AirTag on a map, and as they get closer to the AirTag, the owner is

[7] Apple, "Apple introduces AirTag" Press Release (Apr. 20, 2021) (available at https://www.apple.com/newsroom/2021/04/apple-introduces-airtag/).

[8] Ryan Mac and Kashmir Hill, "Are Apple AirTags Being Used to Track People and Steal Cars?" New York Times (Dec. 30, 2021) (available at https://www.nytimes.com/2021/12/30/technology/apple-airtags-tracking-stalking.html)

then directed with an arrow, sending them right to the AirTag.




Fig. 4

35. Bluetooth range is approximately 30 feet. Thus, for an AirTag to be identified by an Apple device, it must come within 30 feet of that device, at which time, the AirTag will have been located on Apple's network of iPhones, iPads, etc. that are owned and used by consumers in the United States.[9] This network is vast: as of 2017, 64% of Americans owned an Apple product.[10] And this network is only growing. In 2025, 87% of teenagers owned an iPhone.[11]

36. Because of this technology and because of the ubiquity of Apple products, it is virtually impossible to hide from an AirTag in most, if not all, populated areas. As one commentator challenged his readers, "try getting through the day without coming within 30 feet of an iPhone or iPad."[12]

37. Eva Galperin, the director of cybersecurity at the Electronic Frontier Foundation, points out that this ubiquity of Apple products makes AirTags "uniquely harmful," explaining "Apple automatically turned every iOS device into part of the network that AirTags use to report the location of an

[9] Albert Fox Cahn, "Apple's AirTags Are A Gift to Stalkers," Wired (May 13, 2021) (available at https://www.wired.com/story/opinion-apples-air-tags-are-a-gift-to-stalkers/)

[10] Steve Leisman, "America loves its Apple. Poll finds that the average household owns more than two Apple products" CNBC (Oct. 10, 2017) (available at https://www.cnbc.com/2017/10/09/the-average-american-household-owns-more-than-two-apple-products.html)

[11] "Fall 2025: Piper Sandler Teen Survey," Piper Sandler (Fall 2025) (available at https://www.pipersandler.com/teens) (last accessed Oct. 12, 2026).

[12] "Apple's AirTags Are A Gift to Stalkers," note 9, supra.

AirTag. Therefore, the network that Apple has access to is larger and more effective than that used by the other trackers, making it more powerful for tracking and more dangerous for stalking."[13]

38. Immediately after Apple announced the release of the AirTag, prominent voices in both the tech and domestic violence advocacy spaces began warning Apple of the risks inherent in its new product.

39. Within roughly a week of the product's announcement, representatives from the National Network to End Domestic Violence ("NNEDV") spoke out about the serious harms that AirTags pose. Erica Olsen, the Safety Net Project Director at NNEDV, explained: "When somebody tries to leave an abusive person, or they are planning to leave, that can be one of the most dangerous times that stalking and assault can escalate. So it's extremely important if people are planning to leave an abusive person, they're able to do so without the person tracking them down and finding them. It's definitely a concern that people will be using any type of [tracking] product they can."[14]

40. Corbin Streett, a Technology Safety Specialist at NNEDV, elaborated further that individuals being abused by domestic partners were particularly susceptible to being victimized by AirTags: "[Apple] is thinking about the threat model where it's a stalker who is walking by someone on the street they don't know--that stranger danger model--but what about when it is the person you come home to every day?...[H]ow do you build it in a way that those folks who are in relationships, so that this can't be used against them? I hope Apple keeps their learning hat on and works to figure out that piece of the puzzle."[15]

41. As another example, on May 5, 2021, Geoffrey Fowler, the prominent tech reporter for the Washington Post, published a story titled Apple's AirTag trackers made it frighteningly easy to 'stalk' me in a test—Apple knows its tiny new lost-item gadgets could empower domestic abuse but doesn't do enough to stop it," in which he cautioned:

> Along with helping you find lost items, AirTags are a new means of inexpensive, effective stalking. I know because I tested AirTags by letting

---

[13] "Are Apple AirTags Being Used to Track People and Steal Cars?" note 8, supra.
[14] Mark Wilson, "Apple AirTags could enable domestic abuse in terrifying ways," Fast Company (Apr. 29, 2021) (available at https://www.fastcompany.com/90630404/apple-airtags-couldenable-domestic-abuse-in-terrifying-ways)
[15] *Id.*

> a Washington Post colleague pretend to stalk me. And Apple's efforts to stop the misuse of its trackers just aren't sufficient. . . . AirTags show how even Apple, a company known for emphasizing security and privacy, can struggle to understand all the risks involved in creating tech that puts everyday things online.
>
> ...
>
> For most people, AirTags will be a useful convenience that offers precise tracking and a replaceable battery. So why focus on these problems? Because personal tech is no longer just about you. My job as a consumer advocate is to consider the people technology helps -- and those it hurts.… Digital stalking is remarkably common, experts say, and it's strongly linked to physical abuse, including murder.[16]

42. Eva Galperin, the director of cybersecurity at the Electronic Frontier Foundation, expressed her concerns even before the product's launch: "I was concerned ahead of their release as soon as I figured out how they worked. I was concerned very shortly after they were released when I started seeing reports of stalking and being contacted by people who were being stalked using these devices." While acknowledging that Apple subsequently engaged in mitigation efforts—*see* Section E, *infra*—Galperin went on to state that "[t]he mitigations that Apple had in place at the time that the AirTag came out were woefully insufficient," and "the fact that they chose to bring the product to market in the state that it was in last year, is shameful."[17]

43. More recently, an advocate for the Cyber Helpline, a UK-based advocacy network for victims of online abuse, decried Apple's post-hoc safety measures as follows: "You wouldn't allow a car to come to mass-market without having vigorous testing, so why are we allowing smart tech to just be released and then fixing safety features later?"[18]

44. Wired released a story on the issue in a May 13, 2021 titled "Apple's AirTags Are a Gift to Stalkers," in which the author, Albert Fox Cahn, warned:

---

[16] Geoffrey Fowler, "Apple's AirTag trackers made it frighteningly easy to 'stalk' me in a test--Apple knows its tiny new lost-item gadgets could empower domestic abuse but doesn't do enough to stop it," Washington Post (May 5, 2021) (available at https://www.washingtonpost.com/technology/2021/05/05/apple-airtags-stalking/)

[17] Michael Levitt, "AirTags are being used to track people and cars. Here's what is being done about it" NPR (Feb. 18, 2022) (available at https://www.npr.org/2022/02/18/1080944193/appleairtags-theft-stalking-privacy-tech).

[18] Ellie Fry, Inside chilling rise of AirTag stalking as Apple device is branded 'gift to abusers', The Mirror (Apr. 24, 2023) (available at https://www.mirror.co.uk/tech/inside-chilling-riseairtag-stalking-29746435)

> "Apple needs to take domestic abuse and stalking seriously. More than 10 million Americans have likely faced stalking in their lifetimes, with more than a million facing this threat every year. The rates for intimate partner violence is even starker, with more than a quarter of women and 10 percent of men reporting abuse. These are not outliers, this is an epidemic of violence touching nearly every corner of our globe. When Apple fails to protect survivors, the consequences can be fatal. Apple leadership needs to give abuse survivors and experts a central place in its development process, incorporating their feedback from the start. Otherwise, the company will continue to make products that endanger people more than they help."[19]

45. Upon the release of AirTags, rather than heed the concerns of outside groups and commentators, Apple proactively sought to minimize and dismiss those concerns, arranging for interviews with high-level executive[20] touting the safety of the product.




Fig. 5 [21]

[19] "Apple's AirTags Are A Gift to Stalkers," note 9, supra.

[20] The principal interviewees appear to be Kaiann Drance, Apple's VP of worldwide iPhone product marketing, and Ron Huang, the Apple's senior director of sensing and connectivity.

[21] José Adorno, "Apple execs explain how AirTag is 'stalker-proof' and whether you should use it to track pets," 9to5 Mac (Apr. 22, 2021) (available at https://9to5mac.com/2021/04/22/apple-execs-explain-how-airtag-is-stalker-proof-and-whether-you-should-use-it-to-track-pets/)


FAST COMPANY

04-22-21

How Apple designed AirTags to be privacy-first and stalker-proof

AirTag users, owners of other Apple devices, and even people who don't own a single Apple product—the company wants its new tracker to respect everybody's privacy.

[Images: MicrovOne/iStock; courtesy of Apple]

BY MICHAEL GROTHAUS 8 MINUTE READ

Fig. 6[22]


AirTag is stalker-proof even with Android users

April 22, 2021

Apple unveiled on Tuesday its AirTag smart tracker. Designed to be "privacy-first" and "stalker-proof," two Apple executives shared more info about the AirTag with *Fast Company*.

In the interview, Apple's VP of worldwide iPhone product marketing Kaiann Drance and senior director of sensing and connectivity Ron Huang talked about the smart tracker creation and its benefits.

Fig. 7[23]

[22] Michael Grothaus, "How Apple designed AirTags to be privacy-first and stalker-proof," Fast Company (Apr. 22, 2021) (available at https://www.fastcompany.com/90628073/apple-airtagprivacy-security) (interviewing Drance and Huang)

[23] "AirTag is stalker-proof even with Android users," Telegraph (Apr. 22, 2021) (available at https://web.archive.org/web/20221207010643/https://techtelegraph.co.uk/airtag-is-stalker-proof-even-with-android-users/)




Fig. 8[24]

46. These representations, and others, were part of an intentional, coordinated press campaign on the part of Apple, in which its executives and its publicists actively sought to portray the AirTag as a harmless—indeed "stalker-proof" —product. Thus, not only did Apple fail to adequately disclose the risks associated with the AirTag, it affirmatively misled the public and the press as to those risks.

47. Within months of the release of AirTags, reports began to amass of people being stalked by the product. A December 2021 New York Times article noted individuals reporting abuse on TikTok, Twitter, and Reddit, stating that "There is growing concern that the devices may be abetting a new form of stalking, which privacy groups predicted could happen when Apple introduced the devices in April."[25]

48. A 2022 article in The Verge explained:

> "There's no question that AirTags can be—and have been—abused. Sports Illustrated model Brooks Nader recently reported finding a stranger's AirTag in her coat. One Connecticut man was arrested for placing an AirTag on his ex-girlfriend's car; a Texas man admitted to doing the same to his estranged wife last month."[26]

49. The reports are chilling, as illustrated by one commenter on Reddit who cautioned:

> "Check EVERYTHING. I have a friend who had this exact problem,

---

[24] Dave LeClair, "Apple Says AirTags Are Stalker-Proof, Not For Tracking Kids and Pets," (Apr. 22, 2021) (available at https://www.makeuseof.com/airtags-stalker-proof-not-kids-pets/)

[25] "Are Apple AirTags Being Used to Track People and Steal Cars?" note 8, supra.

[26] Monica Chin and Victoria Song "AirTags Are Dangerous -- Here's How Apple Could Fix Them" The Verge (Mar. 1, 2022) (available at https://www.theverge.com/2022/3/1/22947917/airtags-privacy-security-stalking-solutions)

> traveling alone, AirTag notifications even though she didn't have one. She went to the police and they searched everything and found one hidden with extra sticky tape underneath a flap in her backpack. They told her they've seen these in trafficking circles. They kept the tag to investigate and gave her stuff back and told her to be extra vigilant[.]"[27]

50. As of December 2022, AirTag stalking incidents had been reported in New York,[28] California,[29] Pennsylvania,[30] Mississippi,[31] and even at Disney World,[32] as well as one woman reporting a harrowing experience in Paris following a flight from the US.[33]

51. Since that time, an explosion of AirTag stalking reporting has occurred.

52. For example, in just one metropolitan area (Tulsa, Oklahoma), police have investigated 19 cases involving AirTags, with many ending in violence. In one case, the stalker followed a woman to an Airbnb and punched her. Another report says a man used an AirTag to track his former partner to set her car on fire. And in another case, a woman found her boyfriend's ex and punched her in the face.[34]

53. Moreover, international incidents of stalking have spiked, with reports of malicious AirTag use in the United Kingdom[35] and India.[36]

---

[27] https://www.reddit.com/r/applehelp/comments/rkfxnr/unsettling_notification_re_detected_ai rtag_cause/

[28] Sara Boboltz "AirTags Are A Growing Headache For Apple Amid Disturbing Reports Of Tracking," Huffington Post (Dec. 2, 2022) (available at https://www.huffingtonpost.co.uk/entry/apple-airtags-racking_n_61f425ade4b067cbfa1cb2b8)

[29] "Are Apple AirTags Being Used to Track People and Steal Cars?" note 8, supra.

[30] Zahriah Balentine, "2 women believe Apple Airtag was used to stalk them after leaving Central Pa. restaurant," Williamsport Sun-Gazette (Jan. 21, 2022) (available at https://www.sungazette.com/news/2022/01/2-women-believe-apple-airtag-was-used-to-stalk-them-after-leaving-central-pa-restaurant/)

[31] "AirTags Are A Growing Headache For Apple Amid Disturbing Reports Of Tracking," note 27, supra.

[32] Caitlyn Shelton, AirTag tracks family through Disney World, ABC News 10 (May 3, 2022) (available at https://www.news10.com/news/crime/airtag-tracks-family-through-disney-world/)

[33] Maggie Kim, I Was Stalked with an Apple AirTag--Here's What I Wish I'd Known, Reader's Digest (Feb. 11. 2022) (available at https://www.rd.com/article/apple-airtag-stalking/)

[34] Janna Clark, 'That's terrifying,' FOX23 investigates cases of AirTag stalking in Tulsa, Fox 23 (May 15, 2023) (available at https://fox23.com/news/fox23-investigates/thats-terrifying-fox23-investigates-cases-of-airtag-stalking-in-tulsa)

[35] Ellie Fry, Inside chilling rise of AirTag stalking as Apple device is branded 'gift to abusers', The Mirror (Apr. 24, 2023) (available at https://www.mirror.co.uk/tech/inside-chilling-riseairtag-stalking-29746435)

[36] Ankita Chakravarti, Ex-partner uses Apple AirTag to stalk Ahmedabad woman, device found hidden

54. Tragically, in multiple instances, AirTag tracking has resulted in murder.

55. In January 2022, an Akron, Ohio woman was stalked by her ex-boyfriend, who buried an AirTag in the back pocket of the passenger seat in her car. The stalker used the AirTag to follow the woman and shoot her.[37]

56. In June of 2022, an Indianapolis woman hid an AirTag in her boyfriend's car, followed him to a bar, and ran him over with her car, killing him at the scene.[38]

57. In July of 2023, a woman in Chicago was murdered by her estranged boyfriend after removing an AirTag that he'd secretly placed in her car.[39]

58. The scope of AirTag stalking is also staggering. As alleged in other complaints, from April 20th, 2021, to April 5th, 2024, Apple received over 40,000 reports of AirTag stalking, over 1,000 complaints per month on average.

59. Apple's AirTag as originally brought to market in 2021 was designed defectively and negligently released to the public.

60. Apple has since introduced several features into its operating (iOS) architecture, however, those features are ineffective in preventing unwanted tracking and stalking. Indeed, Apple's own internal documents acknowledge that these new features would only "deter as opposed to prevent malicious use."

61. Apple failed to prevent abusers and stalkers from using the AirTag to secretly track and stalk victims through defects in the product that prevented victims from (1) timely learning they were being tracked by an AirTag, (2) finding the unwanted AirTag, and (3) disabling the unwanted AirTag.

---

under driver's seat, India Today (Sep. 5, 2023) (available at https://www.indiatoday.in/technology/news/story/ex-partner-uses-apple-airtag-to-stalkahmedabad-woman-device-found-hidden-under-drivers-seat-2430063-2023-09-02)

[37] Family Believes Akron Mother Was Chased Before Murder, News 5 Cleveland (March 2, 2022) (available at https://www.news5cleveland.com/news/local-news/akron-canton-news/family-believes-akron-mother-was-stalked-emotionally-abused-before-ex-boyfriend-killed-her)

[38] Alexis McAdams, Apple AirTags, meant to help you track your stuff, have become tools of stalkers and criminals, Fox News (June 14, 2022) (available at https://www.foxnews.com/tech/apple-airtag-stalking-dangerous-crime)

[39] CBS Chicago Team, Man killed girlfriend after she removed AirTag he'd secretly placed in her car, prosecutors say, CBS Chicago (July 14, 2023) (available at https://www.cbsnews.com/chicago/news/armoni-henry-charged-murder-jailene-flowers-marianos-evergreen-park/)

62. Knowing that abusers and stalkers would utilize the AirTag to track and stalk victims, Apple should have designed the AirTag, and all subsequent AirTag updates, to immediately alert individuals that they were being tracked, effectively assist the individual in locating the AirTag, and allow the individual to disable the AirTag. Apple did not do this.

**A. Apple Failed To Timely Alert Individuals Being Tracked By An AirTag.**

63. In cases of tracking and stalking, every second matters. The longer that a stalker can track an individual, the more information they can acquire, including the victim's home address, work address, and other whereabouts that can be used to stalk and harm the victim.

64. Because abusers and stalkers hide Apple AirTags in concealed locations, they are able to track their victims without being caught.

65. The design of the AirTag enables individuals to track victims without the victim's knowledge. The AirTag does not notify victims in a timely manner that they are being tracked by an AirTag.

66. The AirTag's design features that would attempt to alert victims that they are being tracked by an AirTag differ by the type of device the victim uses. There is a difference between features that Apple makes available to victims that are iOS users versus those available to victims with Android devices.

**1. AirTag's Interaction with Apple Devices**

67. When Apple first introduced the AirTag product in 2021, it could only alert individuals that had an iPhone, iPad, or iPod Touch with iOS 14.5 or later that they were in proximity of an unknown AirTag. The phone would display an alert if the phone detected an unknown AirTag moving with the device. The warning states "AirTag Found Moving With You."




Fig. 9[40]

68. Apple's algorithm would wait 72 hours before notifying an individual that they had been in the proximity of an unknown AirTag. Put another way, a victim could have been stalked for three days before Apple alerted them of the potential danger.[41] If a victim had device with an iOS earlier than 14.5, they would not have received a notification at all.

69. Apple has since introduced several features into its operating (iOS) architecture, however, those features remain defective and ineffective in preventing unwanted tracking and stalking.

70. Recently, Apple reduced the time period for the notification, but individuals still report not receiving an alert after as much as a day of being tracked: "[a]ccording to Apple, the timing of the alerts can vary depending on the iPhone's operating system and location settings,"[42] but users have no control

[40] https://support.apple.com/en-us/119874
[41] See, "AirTags Are Dangerous -- Here's How Apple Could Fix Them," note 26, supra.
[42] "Are Apple AirTags Being Used to Track People and Steal Cars?" note 8, supra.

over this. As a report by an industry expert noted, "Apple estimates it takes between four and eight hours to send an alert, which could be a potentially fatal span of time."[43]

71. Even with this update the notification only gets sent to individuals who have iPhones, iPads, or iPod Touches that run iOS version 14.5 or later. This means that the notifications do not appear for owners of older iPhones running older software.

72. Most critically, these alerts can only be triggered by Apple's algorithms. An individual with an iPhone cannot trigger a scan independently. This means that a stalked individual is at the mercy of Apple's operating system to determine whether or not an AirTag is moving with them. And, just because an alert has been shown once, it does not follow that the alert will show up again, meaning that a stalked individual may have lost their chance to identify or locate the AirTag if they do not move fast enough.

73. Many of Apple's updates to the AirTag occur via updates of AirTag firmware. For example, firmware update 2.0.24 enabled a feature wherein iPhone owners who are being tracked could use a precision finding feature to locate an unwanted AirTag. But such firmware updates do not happen automatically. Instead, they require the AirTag owners to implement the updates. In the stalking context, this means that these safety updates must be implemented by the very people who the updates are meant to thwart.[44]

74. Publicly available reporting also indicates that an AirTag's identifiers automatically change at regular intervals, in order to protect the privacy of the owners. The problem, however, is that when those identifiers re-set, it appears to thwart Apple's tracking alert logic.[45] [46]

---

[43] Michael Simon, "Apple has an AirTag Problem--here's how to solve it." Macworld (Jan. 21, 2022) (available at https://www.macworld.com/article/606934/apple-airtag-problem-notifications-android-sound.html)

[44] https://support.apple.com/en-us/102183

[45] https://www.macworld.com/article/345863/how-to-find-block-disable-airtag-moving-withyou.html ("Another reason why you may not be able to find the AirTag is that it may have changed its identifier (which happens regularly). The Bluetooth ID produced by an AirTag, and by all Apple devices that participate in Find My crowdsourcing, changes on a regular basis to avoid becoming a reverse tracking item: if it were persistent, then someone could track your devices based on the "anonymous" Bluetooth ID. That means that your iPhone or iPad has to notice an AirTag moving with it over a relatively short period of time."

[46] *Id.*

### 2. AirTag's Interaction with Android Devices

75. For the first two years that AirTag was on the market, Apple did not send a notification to Android users that were in proximity to an unknown AirTag.

76. Thus, for at least two-and-a-half years, individuals who did not own iPhones, iPads, or iPod Touches have been much more vulnerable to being tracked using an AirTag. Android mobile devices have a 41.9% market share in the United States,[47] meaning that almost half of America's population would not receive any notification if they were being stalked by an AirTag.

77. In late 2022, Apple released an app ("Tracker Detect") for Android devices, but it was inadequate for multiple reasons.

78. First, the Android device owner would have to be alerted to, or suspect, the potential of AirTag stalking in the first instance, and would then have to search the Google App Store to find Apple's app. The Tracker Detect App or equivalent functionality was not bundled into Android operating systems or the suite of apps that come with non-Apple manufacturers until late 2023. In order to use this safety measure, individuals would have had to know about it, in the first place, and then seek it out and download it. Apple has not taken meaningful steps to alert Android users of the threat posed by AirTags, and to date, Tracker Detect has only (roughly) one million downloads, worldwide.[48] Thus, virtually every Android phone user would be oblivious to being tracked by an AirTag.

79. Second, the app itself has been described as an example of Apple "fulfilling its obligations to the least extent possible."[49]

80. The Android app is little more than a button to scan the surrounding area for any nearby trackers. It doesn't perform background scanning or issue push notifications, and it certainly doesn't let Android users track items on the Find My network or set up Find My compatible devices.[50]

81. This limitation is critical and, potentially, deadly: Tracker Detect was not "always on," meaning that the user must independently trigger the scan. Thus, the app was only as effective as the user's

---

[47] Mobile & Tablet Android Version Market Share United States Of America | Statcounter Global Stats
[48] https://play.google.com/store/apps/details?id=com.apple.trackerdetect&hl=en_US&gl=US
[49] "Apple has an AirTag Problem--here's how to solve it," note 43, supra.
[50] *Id.*

intuition. An Android had to selectively, and intentionally, engage Tracker Detect to conduct a scan. Once that scan concludes, the app will not scan for AirTags again until the Android device owner once more engages the app. Put another way, any Android owner who downloads Tracker Detect must decide when and where to scan for AirTags—something a person being unknowingly tracked would be unlikely to do.

82. If an individual did download the application and independently trigger a scan, the individual would have to wait 10 minutes before having a "detected" AirTag emit a sound. This is particularly important, as Tracker Detect did not allow for precision finding (i.e., the app did not guide the user towards the AirTag's location). Thus, the only way for a user of Tracker Detect to locate the AirTag was through triggering the sound.[51]

83. Nor is this technology particularly helpful in densely populated areas, where myriad AirTags are likely to be present. Downloading Tracker Detect was fruitless for determining whether a specific AirTag was in the vicinity. All it could tell was that AirTags, in general, were nearby.

84. Apple did not have to wait for Google to provide an Android app that scanned for AirTags in the background. As early as March 2022, Google noted that it already was possible for Apple's app to run in the background. "Domestic violence advocacy groups have raised valid concerns about these products, and we encourage the manufacturers [i.e., Apple] to update their apps to improve proactive scanning," said Google spokeswoman Kaori Miyake.[52]

85. Rather than fix this glaring infirmity immediately, Apple spokesman Alex Kirschner responded: "We're committed to making improvements that continue to guard against unwanted tracking, and we are evaluating ways to make unwanted tracking features stronger for Android users. Continuous background scanning with Tracker Detect on Android would negatively impact battery life and other features that use Bluetooth. The most power-efficient way to enable this type of background scanning for AirTag is to implement it at the Android operating system level."[53]

[51] https://thebinaryhick.blog/2022/01/08/androids-airtags-oof/
[52] Geoffrey A. Fowler, Am I being tracked? Anti-stalking tech from Apple, Tile falls short., Washington Post (Mar. 31, 2022) (available at https://www.washingtonpost.com/technology/2022/03/31/airtags-stalking/)
[53] *Id.*

86. Only in May 2023 did Apple announce a proposed new AirTag feature that would "allow Bluetooth location-tracking devices to be compatible with unauthorized tracking detection and alerts across Android and iOS platforms."[54]

87. In July 2023, devices running Android 6.0+ would begin receiving automatic alerts for unknown trackers—specifically, for AirTags tracking Android users.[55] Assuming this roll out occurred successfully, this presumably brought Android users up to parity with Apple users in terms of operating-system-level security at the time, but did so roughly two-and-a-half years after the introduction of AirTags to the marketplace, and underscores the failures on Apple's part with regard to Android users up until late summer 2023.

88. Even though Apple began sending notifications to Android users beginning in July 2023, these notifications could be delayed four to eight hours—an amount of time which could enable a stalker to obtain private information about the victim, such as their address, or enable the stalker to find and harm the victim.

89. To be clear, Apple's commitments to this new specification are undergirded by a separate profit motive: the company has listed several patent disclosures that it claims apply to the new specification.[56] Per the Electronic Frontier Foundation:

> "That's a way of notifying competitors, and the public, that Apple believes it owns patents that cover the use of this technology. That means Apple could, in the future, choose to charge patent royalties to anyone using this technology, or file a patent infringement lawsuit against them.
> … The decision to assert patents over this specification is unnecessary and unfortunate. The public will suffer a significant loss if Apple asserts that it has patent rights to what should be an open, free repository of information meant to help companies and everyday people prevent stalking and malicious tracking. Apple could threaten or sue people who use agreed-upon technology to prevent unwanted tracking.
> … Apple stands alone in its insistence that it may use intellectual property rights to threaten people with patent lawsuits, or demand fees, for using

[54] Google Security Blog, Google and Apple lead initiative for an industry specification to address unwanted tracking, (May 2, 2023) (available at https://security.googleblog.com/2023/05/google-and-apple-lead-initiative-for.html)

[55] Google Blog, 3 ways unknown tracker alerts on Android help keep you safe, (Jul. 27, 2023) (available at https://blog.google/products/android/unknown-tracker-alert-google-android/)

[56] Alexis Hancock and Eva Galperin, The Industry Discussion About Standards For Bluetooth-Enabled Physical Trackers Is Finally Getting Started, EFF.org (Aug. 14, 2023) (available at https://www.eff.org/deeplinks/2023/08/industry-discussion-about-standards-bluetooth-enabled-physical-trackers-finally)

> privacy-protecting technology. The IETF convening included Samsung, Google, Mozilla, and many other patent-owning entities, all of whom chose not to engage in this type of threatening behavior.
> … Apple's decision to bring patent rights into this conversation is disappointing. The company should withdraw its patent disclosures and make a public statement that it won't make intellectual property claims against companies or users who don't want to be surreptitiously tracked."
> … The technology required for Detecting Unwanted Location Trackers can, and should, be free to all."[57]

90. Apple prioritizing battery life--or its patent rights--over safety is unconscionable. As is its insistence that Google bears responsibility to implement background scanning for an Apple product that was dangerously rushed to market. Apple could have made its product safer for all individuals, yet it chose not to, and allowed two and a half years to elapse until its competitor bridged the gap. Apple has shifted the burden of safety onto its rivals, with the added caveat that it may force them to pay for this privilege.

**B. <u>Apple Failed To Adequately Assist Victims Find An Unwanted AirTag.</u>**

91. The AirTag fails to enable victims being tracked by an unwanted AirTag to locate and remove that AirTag.

92. For victims that even receive a notification from Apple that they were in proximity to an unknown AirTag, the notification also purportedly enables the iPhone or iPad, or iPod Touch user to have the AirTag emit a beep so that it can be located. The sound the AirTag emits, however, is hard to hear and easily confused with other gadgets.

93. More importantly this feature appears not to work reliably. One reporter who tested it stated: "The AirTag was literally inches away from [the test] phone, but it wouldn't connect. We tried multiple times. Nada. The same thing happened to me when I was trying to find which pocket of my bag my husband had stashed his AirTag in. My phone was in my hand. My bag was in my other hand. Nothing. This is obviously an issue, as it's hard to get rid of an unknown AirTag if you can't find it. Another problem is that sound alerts may not be helpful if a victim is trying to find the tracker discreetly without tipping off their abuser."[58]

---

[57] *Id.*

[58] See, "AirTags Are Dangerous -- Here's How Apple Could Fix Them," note 26, supra.

94. Additionally, Apple states that if an unknown AirTag is away from its owner for a long time—Apple does not specify precisely how long but says between eight and twenty-four hours—the AirTag will play a chime-like sound so that it can be found.

95. The alert sound is roughly 60 decibels, which is approximately as loud as a normal conversation between two people, or background music. Moreover, the sound is not particularly distinctive, meaning that it can be mistaken for other, benign and ambient noises coming from other devices. As one reporter who tested the security feature noted: "the sound was easy to confuse with all the other beeps and boops gadgets make these days. It also stopped playing long before [the tester] was able to find it."[59] Ultimately, "[w]hether you hear the AirTag chime feels like a crapshoot."[60]

96. This is particularly problematic if the victim is hearing impaired or in a loud environment, or if the stalker places the AirTag in a place where it will be muffled or out of range of hearing (like the outside of a car). As one commentator noted, "If [an AirTag is] behind your license plate and you're driving, you're never going to hear that."[61]

97. As one other reporter wrote, "Many stalking victims in AirTag cases have complained that when they received the warning that an AirTag was traveling with them, they were unable to find it after searching. This left them feeling exposed and vulnerable, as they weren't sure if the AirTag was still nearby."[62]

98. Worse, people have figured out how to disable the speaker on AirTags, and are selling modified "silent AirTags" on mainstream e-commerce sites like eBay and Etsy.[63] Per similar reporting, "tutorials that illustrate how to deactivate or completely remove the Air Tag's speaker are readily available online. There are no software updates that Apple can release that will make a physically modified AirTag start to make noise again, and the other included safety features are still dependent on victims not only

[59] *Id.*
[60] *Id.*
[61] *Id.*
[62] Sarah Perez, "Apple to Address AirTag Stalking Problems With Upcoming Features," TechCrunch (Feb. 10, 2022)" (available at https://techcrunch.com/2022/02/10/apple-to-address-airtag-stalking-problem-with-upcoming-features/)
[63] Hartley Charlton, "Sale of 'Silent AirTags' on eBay and Etsy Raises Privacy Concerns," MacRumors (Feb. 3, 2022) (available at https://www.macrumors.com/2022/02/03/silent-airtags-privacy-concerns/)

having an up-to-date smartphone but also being technically savvy enough to download and use the necessary apps to find rogue AirTags nearby. The risks involved with a product like this being abused still seem like they far outweigh the convenience of finding a misplaced set of keys."[64]

**C. Apple Failed To Adequately Allow Victims to Disable An Unwanted AirTag Without Placing Them In Further Danger.**

99. Physical possession of the AirTag is required for a victim to disable it from tracking. This is a significant defect in the product, as many survivors are unable to find the AirTag due to the sound alert being too low. Additionally, the AirTag is small enough to hide in a variety of locations that are not easily accessible. Finding the AirTag is not always possible; or else it might require significant cost. For example, an AirTag may be hidden within the body of a vehicle in a location that may require a mechanic to take apart the body of the car to find the AirTag at a considerable cost.

100. In the event an individual even locates the unwanted AirTag, they must still figure out what to do with it.

101. AirTags can only be deactivated by removing the battery.

102. This means that a victim must (1) find the AirTag, and (2) pop off the cover to remove the battery. [65]

103. Importantly, disabling the AirTag alerts the device's owner, which can further place the victim in danger.

104. "If the offender is monitoring the victim's actions and sees that the AirTag has now gone to [somewhere like a] police station, that can escalate the situation and put a victim more in danger," cautions Jennifer Landhuis, the director of the Stalking Prevention Awareness and Resource Center.[66]

---

[64] Andrew Liszewski, "Silenced AirTags With Disabled Speakers Are Popping Up for Sale Online," Gizmodo (Feb. 3, 2022) (available at https://gizmodo.com/silenced-airtags-withdisabled-speakers-for-sale-online-1848473673)

[65] https://support.apple.com/en-us/119874

[66] "AirTags are being used to track people and cars. Here's what is being done about it," note 16, supra.

105. Additionally, law enforcement agencies have pointed out that removing the AirTag's battery could potentially contaminate it as evidence.[67] This compromises the victim's ability to obtain justice through a criminal investigation.

**D. Alternative Designs For The AirTag Were Available To Apple, Yet Apple Did Not Implement Them.**

106. Apple's carelessness in designing, marketing, and releasing the AirTag with inadequate protections against stalking and unwanted tracking is magnified by the fact that alternative designs for the AirTag and its accompanying software were available that would have mitigated these risks with no substantial impairments to the AirTag's advertised, legitimate functions.

107. In fact, Apple knew that several alternative designs and software changes were available, because Apple itself incorporated numerous software changes and design features following the AirTag's release, once it realized that its launch features were inadequate, due to well-publicized reports of AirTags being used for stalking and harassment.

108. For example, at release, an individual being tracked by an AirTag had to wait 3 days before receiving any alert. Apple later shortened this period to 8-24 hours of continuous tracking.

109. Apple could have launched the AirTag alongside an app for Android devices that would have provided alerts to individuals that did not possess iOS devices but were nonetheless vulnerable to unwanted tracking. Apple's post-release development and release of the TrackerDetect app shows that it was aware that leaving Android users vulnerable was a serious defect in the AirTag's safety feature. In fact, even the TrackerDetect app demonstrates a failure on Apple's part and the feasibility of a safer alternative design, given that subsequently, Apple partnered with Google and others to enable Android owners to receive alerts on their phones.

110. Additionally, Apple could have designed its unwanted tracking alerts so that dismissed alerts are stored and available for recalled viewing at an alternate time and location by victims. Instead, victims who received an alert and dismissed it, either through accident or confusion, were left with no option to view the alert again or follow the instructions Apple provided once the alert was tapped.

[67] "AirTags are being used to track people and cars. Here's what is being done about it," note 16, supra.

111. Apple could have designed a method whereby victims of unwanted tracking could remotely disable an AirTag in their vicinity once an alert had been received. Instead, victims are required to locate the AirTag and physically remove the device's battery before tracking can be disabled. Individuals that cannot locate the AirTag, or who are concerned about potentially tampering with evidence, have no choice but to accept being tracked.

112. Apple could allow a victim who receives an alert to have a feature where that victim could "mute" their location for a time period, allowing the tracked individual to reach a safe location and identify the AirTag in question.

113. Apple could adjust its notifications so that an alert triggers a victim's location is being viewed by their stalker via an AirTag, rather than after 8 hours of continuous tracking.

114. Apple could adjust the AirTag's tracking features so that moment-by-moment tracking is available only for a limited period of time before being locked. A user that wished to have the feature unlocked would have to call Apple Support and provide a statement that includes their: (a) name; (b) phone number; (c) address; (d) Apple ID; (e) device serial number; and (f) the reason for requesting moment-to-moment tracking. Individuals with a legitimate use for the AirTag would be unlikely to run into this ceiling, while stalkers would be limited in their ability to track and harass victims without providing potentially incriminating evidence.

115. Alternatively, Apple could lock moment-to-moment AirTag tracking behind a subscription paywall, requiring a recurring fee and registration information from users who wanted more than occasional location updates. This would have limited the accessibility of AirTags as a tool for stalkers and provided law enforcement with suspect information in the event of stalking and unwanted tracking, while still preserving the device's advertised function.

116. Additionally, Apple could have designed the AirTag so that any attempts to tamper with its speakers would disable the device's tracking capabilities.

117. These alternative designs, some of which ultimately were adopted in part by Apple, show that the AirTag was and remains defectively designed, and Apple's decision to market and release the AirTag indicates a conscious disregard for the privacy and security of individuals like Plaintiff.

118. Even in the event that a victim of AirTag stalking is able to discover the AirTag and bring it to law enforcement, there are very few meaningful protections that such a victim would then be able to receive. At present, only 23 states have electronic tracking laws,[68] and stalking, in and of itself, is a crime that often goes unprosecuted:

> "Stalking goes unrecognized, uncharged, and unprosecuted for a number of reasons. Victims, police, and prosecutors often fail to recognize patterns of behavior as "stalking," or associate the term exclusively with following, monitoring, or surveillance--acts that represent only one variety of the many types of behavior that may fit the statutory definition of stalking. Police and prosecutors may focus on a specific incident that resulted in a law enforcement response (e.g., an assault, an isolated threat, an act of vandalism) and fail to explore the context within which the act was committed--context that may include a course of conduct chargeable as stalking. Prosecutors, failing to understand the strategic value of a stalking charge, may wonder why they should bother "complicating" their case when they have strong evidence of a crime that is perceived to be more serious and easier to prosecute."[69]

119. Indeed, the number of individuals who are stalked in the United States is jaw-dropping. More than 6 million people over the age of 18 are stalked each year in the United States, according to data from the Department of Justice's Bureau of Justice Statistics (BJS).[70] That number is believed to be much higher, however, as BJS statistics indicate just 40% of stalking cases are reported to police.[71] According to the Stalking Prevention, Awareness, and 9 Resource Center (SPARC), one in six women and one in 17 men are stalking survivors. Roughly 15% of those individuals said the stalking forced them to move.[72] Yet, once reported to the police, only 8% of stalking perpetrators are arrested.[73]

---

[68] Alexis McAdams, "Apple AirTags, meant to help you track your stuff, have become tools of stalkers and criminals," Fox News (June 14, 2022) (available at https://www.foxnews.com/tech/apple-airtag-stalking-dangerous-crime).

[69] Stalking Prevention Awareness and Resource Center ("SPARC"). Prosecutor's Guide to Stalking (2020) (available at https://www.stalkingawareness.org/wp-content/uploads/2020/01/SPA-19.005-Prosecutors-Guide-to-Stalking-00000002-revised.pdf)

[70] Megan Stone, "After 9-year fight to prosecute her stalker, woman shares story to help other survivors," ABC News (Jan. 5, 2021) (available at https://abcnews.go.com/GMA/Living/yearfight-prosecute-stalker-woman-shares-story-survivors/story?id=74878256)

[71] *Id.*

[72] *Id.*

[73] *Id.*

120. This fact bears particular emphasis given that one of Apple's principal responses in the wake of the AirTags fallout has been that "[w]e have been actively working with law enforcement on all AirTag-related requests we've received. Apple can provide the paired account details in response to a subpoena or valid request from law enforcement. We have successfully partnered with them on cases where information we provided has been used to trace an AirTag back to the perpetrator, who was then apprehended and charged."[74] This statement is critically misleading for several reasons.

121. First, as noted above, the number of stalkers who face criminal prosecution is shamefully low. This stems from the fact that stalking behavior is not criminalized in many jurisdictions meaning that no charges could be brought. Further, even when the stalking is punishable under state law, police are often disinterested in pursuing the matter further, meaning that no fulsome investigation—let alone an arrest—occurs. Apple seeks to hand its obligations off to law enforcement, but this is a deeply flawed approach, given the uneven patchwork of criminal laws around the country.

122. News reports of AirTag stalking are replete with examples of victims either not filing reports or being rebuffed by police:

> "Kimberly Scroop, from California, says the police refused to take a report when she alerted them to an AirTag tracking her location. She claims officers even went as far to say that nothing illegal had occurred, despite stalking being a crime in the state of Arizona, where she tried to report the incident.... Kimberly went to the police station [after finding the AirTag] to report the device, hoping whoever might be tracking her could see that she was going straight to the authorities. When she showed the officers the screenshots of the map tracking her location, they had 'no idea what an AirTag was' "They essentially told me, 'We don't know what the technology is, and if you don't know who it is, what do you expect us to do?' but I thought that was their job," she says "I explained again, and they wouldn't even let me go past the front desk. They wouldn't write my name down. Nothing."[75]

> "… Back in Chicago, the police did take a report of Angelina's case, but she says officers were also unsure what an AirTag was, and didn't know what to file the crime as. Despite her managing to find the device, as well as the AirTag's serial number and partial phone number the device was registered

[74] Apple, An update on AirTag and unwanted tracking, Apple.com (Feb. 10, 2022) (available at https://www.apple.com/newsroom/2022/02/an-update-on-airtag-and-unwanted-tracking/)

[75] Ellie Fry, Inside chilling rise of AirTag stalking as Apple device is branded 'gift to abusers', The Mirror (Apr. 24, 2023) (available at https://www.mirror.co.uk/tech/inside-chilling-riseairtag-stalking-29746435)

> to, Angelina says the cops told her there wasn't much they could do, but said a detective would follow up. She hasn't heard from them since."[76]
>
> "[S]ince Carney did not file a police report, for fear of retribution, she has not been able to find out for sure who is behind the rogue AirTag found in her bag."[77]

123. Second, Apple does not provide fulsome sets of information in response to law enforcement requests, and instead engages in obfuscatory tactics that prevent disclosure of critical information.

124. It is not entirely clear why Apple would not provide identifying information as to the owner of an AirTag in response to a law enforcement subpoena as a matter of course, but the answer may lie in the guidance that Apple provides to law enforcement regarding its response protocols to requests for AirTag information: "With a serial number, Apple may be able to provide the paired account details in response to a subpoena or greater legal process. AirTag pairing history is available for a period up to 25 days."[78]104. Thus, due to Apple's data retention policies with respect its product that has a known use-case for stalking, Apple can only provide useful information in a criminal investigation if (1) the AirTag at issue was paired within the past 25 days and (2) the subpoena or other valid request was received within that same window. This also assumes that the victim managed to locate and obtain possession of the AirTag, as the device's serial number is required in order to locate the data in the first place.

125. These limitations are crippling to a criminal investigation, not to mention an effective prosecution. Apple's statements about cooperation with law enforcement are deeply misleading.

126. As one reporter summarizes: "What all this shows is how such a relatively innocuous piece of technology can have massive unintended consequences, but Apple's response to the privacy nightmare it's created has been slow and piecemeal. While the company touts that it will give up any information to

---

[76] *Id.*

[77] AirTag stalking victims unconvinced by Apple fixes, TechXplore (Feb. 15, 2023) (available at https://techxplore.com/news/2023-02-airtag-victims-unconvinced-apple.html)

[78] Apple, Legal Process Guidelines (available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf)

law enforcement regarding tracking, Apple's strategy puts the onus on regular people to be aware of the technology and actively scan for it on their person."[79]

127. Recent enforcement actions by the FTC directly speak to the plainly-illegal, dangerous, and fundamentally unfair nature of Apple's conduct.

128. For example, in August 2022, the Commission filed suit against the data broker Kochava, Inc. "for selling geolocation data from hundreds of millions of mobile devices that can be used to trace the movements of individuals to and from sensitive locations. Kochava's data can reveal people's visits to reproductive health clinics, places of worship, homeless and domestic violence shelters, and addiction recovery facilities."[80]

129. The FTC alleges that by selling data tracking people, Kochava is enabling others to identify individuals and exposing them to threats of stigma, stalking, discrimination, job loss, and even physical violence.[81]

130. Per the Commission, the lawsuit involves Kochava's "vast troves of location information derived from hundreds of millions of mobile devices... People are often unaware that their location data is being purchased and shared by Kochava and have no control over its sale or use."[82]

131. Risks associated with the unwanted collection of location data include identification of individuals' home addresses, and, more broadly, "puts consumers at significant risk. The company's data allows purchasers to track people at sensitive locations that could reveal information about their personal health decisions, religious beliefs, and steps they are taking to protect themselves from abusers. The release of this data could expose them to stigma, discrimination, physical violence, emotional distress, and other harms."[83]

---

[79] Kyle Barr, Apple Quietly Rolls Out New Updates That Could Prevent AirTag Stalking, Gizmodo (Dec. 22, 2022) (available at https://gizmodo.com/apple-airtags-stalking-tracking-1849922603)

[80] Federal Trade Commission, "FTC Sues Kochava for Selling Data that Tracks People at Reproductive Health Clinics, Places of Worship, and Other Sensitive Locations" (August 29, 2022) (available at https://www.ftc.gov/news-events/news/press-releases/2022/08/ftc-sues-kochava-selling-data-tracks-people-reproductive-health-clinics-places-worship-other)

[81] *Id.*

[82] *Id.*

[83] *Id.*

132. Such acts and practices "reveal consumers' visits to sensitive locations, including, among others, locations associated with medical care, reproductive health, religious worship, mental health, temporary shelters, such as shelters for the homeless, domestic violence survivors, or other at-risk populations, and addiction recovery" and, in turn "cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition." Accordingly, they "constitute unfair acts or practices in violation of Section 5 of the FTC Act."[84]

133. The enforcement action against Kochava is not an outlier. In 2019, the FTC brought an enforcement action against Retina-X, a company accused of creating "stalking apps," that could be placed on users phones in order to surreptitiously surveil them. Like the Kochava action, and like the instant action against Apple, "these apps were designed to run surreptitiously in the background and are uniquely suited to illegal and dangerous uses. Under these circumstances, we will seek to hold app developers accountable for designing and marketing a dangerous product."[85]

134. There, as here, the defendant "sold monitoring products and services that required circumventing certain security protections implemented by the Mobile Device operating system or manufacturer, and did so without taking reasonable steps to ensure that the monitoring products and services will be used only for legitimate and lawful purposes by the purchaser. Respondents' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. This practice is an unfair act or practice [in violation of the FTC Act]."[86]

135. Similarly here, Apple sold AirTags, which were designed to run surreptitiously in the background and are unique suited to illegal and dangerous uses by stalkers and abusers. Apple should be

[84] Complaint, Federal Trade Commission v. Kochava, Inc., Case No. 2:22-cv-377 (D. Idaho), Dkt. No. 1 at paragraphs 36-38.

[85] Federal Trade Commission, "FTC Brings First Case Against Developers of 'Stalking' Apps," (October 22, 2019) (available at https://www.ftc.gov/news-events/news/press-releases/2019/10/ftc-brings-first-case-against-developers-stalking-apps)

[86] *In the Matter of Retina-X Studios, LLC, a limited liability company; and James N. Johns, Jr., individually and as sole member of Retina-X Studios, LLC.*, FTC Matter/File Number 172-3118, Docket Number C-4711, March 26, 2020, Complaint, at paragraph 32.

held accountable for failing to take reasonable steps to design the product to ensure that it would be used only for legitimate and lawful purposes.

## V. PLAINTIFF-SPECIFIC ALLEGATIONS

136. Plaintiff is a mother who lives in Tennessee with her son.

137. Before discovering that she was being tracked with an AirTag, Plaintiff's ex-husband showed up to Plaintiff's place of work and apartment while she was there.

138. Prior to November 2025, Plaintiff also began to notice that her ex-husband seemed to have information about her whereabouts.

139. During this time, Plaintiff was going through a divorce from her ex-husband.

140. It was not until approximately November 3, 2025 that Plaintiff's Android phone received a notification that she was in proximity to an unknown AirTag.

141. After searching her vehicle, Plaintiff was able to locate the AirTag concealed in the trunk of her car.

142. Plaintiff learned that this AirTag was registered to her ex-husband's phone.

143. As a result of being tracked by a concealed AirTag, Plaintiff has experienced significant emotional distress. She suffers from severe anxiety and feels like she has lost her autonomy. She is constantly nervous that someone is watching her, and she is terrified that her ex-husband will continue to stalk her and escalate his behavior.

144. As a result of being tracked with an AirTag, Plaintiff purchased a device that can scan for the presence of unknown and unwanted AirTags.

145. Plaintiff's life has been permanently altered. Her sense of safety and security has been devastated.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### NEGLIGENCE

146. A defendant is liable for conduct that unreasonably creates a foreseeable risk of harm and injury to others.

147. Apple owed Plaintiff a duty to exercise reasonable care in the design, marketing, and introduction of AirTags into the market because Apple's conduct created a foreseeable risk of harm to persons such as Plaintiff.

148. Specifically, Apple owed Plaintiff a duty to protect Plaintiff from unreasonable risk of tracking, stalking, and other injury resulting from wrongdoers using the AirTag to track victims.

149. As detailed above, Apple's course of action in designing, marketing, and rushing AirTags to market without adequate safety features—including safety features Apple itself determined were needed to protect people from unwanted tracking, and safety features Apple represented to the public as present in AirTags—created a foreseeable risk of injury of the type Plaintiff suffered here.

150. Apple further owed Plaintiff a duty of care arising from its voluntary undertaking in designing, marketing, and deploying the updated features that it purported to the public as protective against stalking and other misuse. By voluntarily implementing such features, Apple again assumed a duty to perform that undertaking with reasonable care.

151. Plaintiff was a foreseeable victim of being tracked by an AirTag without knowledge or consent. Apple breached its duty of care by rushing AirTags to market with inadequate safeguards to prevent their use for stalking purposes.

152. It was foreseeable to Apple that that wrongdoers could misuse the AirTag to track, stalk, and harm victims. It was the precise risk Apple's design enabled and against which Apple could have, but knowingly failed to, guard.

153. It was also foreseeable to Apple that not alerting individuals immediately that they were within proximity of an unknown AirTag and not adequately assisting these individuals in finding and disabling the AirTag would result in wrongdoers tracking victims without their knowledge.

154. Apple knew or, by the exercise of reasonable care, should have known that the reasonably foreseeable use of its produce was or could be dangerous, harmful, and injurious when used by wrongdoers to secretly track victims.

155. Apple knew, or by the exercise of reasonable care, should have known, that individuals would not have realized the risks and dangers of AirTags, including a risk of tracking, stalking, and further injury.

156. Imposing a duty on Apple would not be unduly or unreasonably burdensome to it because it has the technological and financial means to avoid the risk of harm to Plaintiff or by including features that would have protected Plaintiff.

157. This breach of duty by Apple was the cause in fact of Plaintiff's injury because, absent Apple's conduct, the AirTag tracking would not have occurred.

158. Those breaches include, but are not limited to, failing to do the following:

a. Alerting all iPhone and Android users immediately if they enter the proximity of an unknown AirTag, regardless of operating system, make, and model of the phone;

b. Sending multiple subsequent alerts to iPhone and Android users that they are in the proximity of an unknown AirTag;

c. Allowing an individual in proximity of an unknown AirTag to ping the AirTag such that it emits a sound loud enough to enable the individual to locate the device;

d. Allowing an individual to disable an unwanted AirTag without removing the battery and taking apart the device; and

e. Automatically implementing updates to the AirTag firmware, instead of requiring AirTag owners to implement these updates.

159. This breach of duty by Apple was also the proximate and legal cause of Plaintiff's injury because Plaintiff's injury was the natural, foreseeable, and probable consequence of Apple's conduct in bringing its AirTags to market without adequate safety features.

160. As a direct and proximate result of Apple's defective product, Plaintiff suffered mental and emotional distress, including anxiety, fear, and loss of autonomy.

161. Apple's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Apple and deter others from like conduct.

162. Plaintiff demands judgment against Apple for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SECOND CAUSE OF ACTION

## STRICT LIABILITY – DESIGN DEFECT

163. At all relevant times, Apple designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, manufactured, sold, supplied, distributed, and benefitted from the AirTag product.

164. This product was designed, manufactured, maintained, controlled, and distributed from Apple's California headquarters.

165. Apple's product is distributed and sold to the public through retail channels.

166. Apple defectively designed its product to allow wrongdoers to misuse the product and track, stalk, and harm victims.

167. The nature and magnitude of the risks of harm associated with that design in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product was severe in that the AirTag enabled virtually anybody to track someone's precise location in real-time without their knowledge. No one was exempt from this risk, and Apple knew that it was virtually certain to occur.

168. The awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm was low and not at all open and obvious. Apple affirmatively misled the public to believe AirTags were reasonably safe, and that their mobile devices would warn them if they were being tracked.

169. The likelihood that this design would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product was very high.

170. Apple defectively designed its product to appeal to wrongdoers by making it easy to utilize the AirTag to track surreptitiously and stalk victims without their knowledge, including Plaintiff.

171. Apple's product is defectively designed in that it creates an inherent risk of danger; specifically, a risk of tracking, stalking, and harming victims, which can lead to a cascade of harms. Those harms include but are not limited to being stalked, physical injury, damage to feelings of safety and security, interruptions to daily life functions, and profound mental health issues, including but not

limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

172. The foreseeable risks associated with the AirTag outweigh any purported benefits or utility:

a. The nature and magnitude of the risks of harm associated with that design in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product was severe in that the AirTag enabled virtually anybody to track someone's precise location in real-time without their knowledge; no one was exempt from this risk, and Apple knew that it was virtually certain to occur.

b. The awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm was low and not at all open and obvious. Apple affirmatively misled the public to believe AirTags were reasonably safe, and that their mobile devices would warn them if they were being tracked.

c. The likelihood that this design would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product was very high.

d. The design of the AirTag did not conform to any applicable public or private product standard that was in effect when the product left the control of its manufacturer, including for example, the recommendations of domestic abuse advocacy organizations.

e. The intended or actual utility of the product, including any performance or safety advantages associated with that design, is low relative to the magnitude and severity of its inherent safety risks.

f. The technical and economic feasibility of using an alternative design was high. Apple designed and developed better safety features but rushed its product to market without those features.

g. The nature and magnitude of any foreseeable risks associated with an alternative design is low, as the enhanced safety features would have served only to increase awareness of unwanted tracking by unsuspecting victims.

173. Apple could have utilized cost-effective, reasonably feasible alternative designs, including changes to the problematic features described above, to prevent the harms described herein, including, but not limited to:

a. Alerting all iPhone and Android users immediately if they enter the proximity of an unknown AirTag, regardless of operating system, make, and model of the phone;

b. Sending multiple subsequent alerts to iPhone and Android users that they are in the proximity of an unknown AirTag;

c. Allowing an individual in proximity of an unknown AirTag to ping the AirTag such that it emits a sound loud enough to enable the individual to locate the device;

d. Allowing an individual to disable an unwanted AirTag without removing the battery and taking apart the device; and

e. Automatically implementing updates to the AirTag firmware, instead of requiring AirTag owners to implement these updates.

174. Alternative designs were available that would prevent wrongdoers from tracking, stalking, and harming victims, and which would have served effectively the same purpose of Apples product while reducing the gravity and severity of danger posed by the product's defects.

175. The physical, emotional, and economic injuries of Plaintiff were reasonably foreseeable to Apple at the time of its product's development, design, advertising, manufacture, marketing, promotion, and distribution.

176. As a manufacturer, designer and seller, Apple had a duty to inform itself with the best knowledge of the risks and the defects of its product and Apple had such knowledge. Its victims, including Plaintiff, were powerless to protect themselves against unknown harms, and Apple should bear the costs of their injuries.

177. As a direct and proximate result of Apple's defective product, Plaintiff suffered mental and emotional distress, including anxiety, fear, and loss of autonomy.

178. Apple's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Apple and deter others from like conduct.

179. Plaintiff demands judgment against Apple for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**THIRD CAUSE OF ACTION**

**DESIGN DEFECT**

**Tennessee Products Liability Act (TPLA); Tenn. Code Ann. § 29-28-101, et seq.**

180. At all relevant times, Apple designed and manufactured a product and placed into trade or commerce the AirTag used to track Plaintiff. Apple is thus a "manufacturer" and "seller" as defined by Tenn. Code Ann. § 29-28-102.

181. Apple is liable to Plaintiff under the Tennessee Products Liability Act design defect theory.

182. Under Tennessee's product liability statute, a product is in a defective if it is in a "condition that renders it unsafe for normal or anticipated handling and consumption." Tenn. Code Ann. § 29-28-102. A product is unreasonably dangerous if "the product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer… or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition." *Id.*

183. The design of Defendant's AirTag is defective because its design renders it unsafe for normal or anticipated handling and consumption.

184. The nature and magnitude of the risks of harm associated with that design in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product was severe in that

the AirTag enables virtually anybody to track someone's precise location in real-time without their knowledge. No one was exempt from this risk, and Apple knew that it was virtually certain to occur.

185. The AirTag is dangerous to an extent beyond that which would be contemplated by the ordinary consumer. The awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm was low and not at all open and obvious. Apple affirmatively misled the public to believe AirTags were reasonably safe, and that their mobile devices would warn them if they were being tracked.

186. The likelihood that this design would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product was very high.

187. Apple defectively designed its product to appeal to wrongdoers by making it easy to utilize the AirTag to track surreptitiously and stalk victims without their knowledge, including Plaintiff.

188. Apple's product is defectively designed in that it is unreasonably dangerous; specifically, in that there is a risk of tracking, stalking, and harming victims, which can lead to a cascade of harms. Those harms include but are not limited to being stalked, physical injury, damage to feelings of safety and security, interruptions to daily life functions, and profound mental health issues, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

189. The foreseeable risks associated with the AirTag outweigh any purported benefits or utility and these risks render the product dangerous to an extent beyond what would be contemplated by the ordinary consumer are:

a. The nature and magnitude of the risks of harm associated with that design in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product was severe in that the AirTag enabled virtually anybody to track someone's precise location in real-time without their knowledge; no one was exempt from this risk, and Apple knew that it was virtually certain to occur.

b. The awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm was low and not at all open and obvious. Apple

affirmatively misled the public to believe AirTags were reasonably safe, and that their mobile devices would warn them if they were being tracked.

c. The likelihood that this design would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product was very high.

d. The design of the AirTag did not conform to any applicable public or private product standard that was in effect when the product left the control of its manufacturer, including for example, the recommendations of domestic abuse advocacy organizations.

e. The intended or actual utility of the product, including any performance or safety advantages associated with that design, is low relative to the magnitude and severity of its inherent safety risks.

f. The technical and economic feasibility of using an alternative design was high. Apple designed and developed better safety features but rushed its product to market without those features.

g. The nature and magnitude of any foreseeable risks associated with an alternative design is low, as the enhanced safety features would have served only to increase awareness of unwanted tracking by unsuspecting victims.

190. The following design defects in Defendant's AirTag at the time the product left the control of Apple render the product unsafe for normal or anticipated handling and consumption:

a. Defendant does not alert iPhone and Android users immediately if they enter the proximity of an unknown AirTag, and whether an individual is alerted and when they are alerted depends on operating system, make, and model of their phone;

b. Defendant does not send multiple subsequent alerts to iPhone and Android users that they are in the proximity of an unknown AirTag;

c. A hidden AirTag does not emit a sound loud enough for an individual to locate the device;

d. Apple does not allow an individual to disable an unwanted AirTag without removing the battery and taking apart the device; and

e. Defendant does not automatically implement updates to the AirTag firmware, and instead, requires AirTag owners (i.e. individuals who are tracking victims with the AirTag) to implement these updates.

191. Alternative designs were available that would prevent wrongdoers from tracking, stalking, and harming victims, and which would have served effectively the same purpose of Apple's product while reducing the gravity and severity of danger posed by the product's defects.

192. The physical, emotional, and economic injuries of Plaintiff were reasonably foreseeable to Apple at the time of its product's development, design, advertising, manufacture, marketing, promotion, and distribution.

193. As a manufacturer, designer and seller, Apple had a duty to inform itself with the best knowledge of the risks and the defects of its product and Apple had such knowledge. Its victims, including Plaintiff, were powerless to protect themselves against unknown harms, and Apple should bear the costs of their injuries.

194. As a direct and proximate result of Apple's defective product, Plaintiff suffered mental and emotional distress, including anxiety, fear, and loss of autonomy.

195. Apple's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Apple and deter others from like conduct.

196. Plaintiff demands judgment against Apple for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## VII. RELIEF REQUESTED

197. Plaintiff requests the Court to enter judgment against Defendant, and accordingly, requests the following:

1. That judgment be entered against Defendant and in favor of Plaintiff on the causes of action set forth in this Complaint;
2. That judgment be entered against Defendant for all injunctive, declaratory, and other equitable relief sought, including but not limited to an order enjoining Apple from further unlawful or unfair practices with respect to the design, manufacture, and release into the market of its AirTags;
3. That Plaintiff be awarded all damages and punitive damages, in an amount to be determined at trial;
4. Reasonable attorneys' fees and litigation costs, and all other costs of suit;
5. All other relief the Court may deem appropriate.

## VIII. DEMAND FOR JURY TRIAL

198. Plaintiff demands a trial by jury of all claims so triable.

October 28, 2026

Respectfully submitted,

/s/ *Sarah R. London*

Sarah R. London (State Bar No. 267083)
Simon Grille (State Bar No. 294914)
Andrew Kaufman (*Pro Hac Vice*)
Isabel Velez (State Bar No. 359574)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
Email: slondon@girardsharp.com
Email: sgrille@girardsharp.com
Email: akaufman@girardsharp.com
Email: ivelez@girardsharp.com

*Attorneys for Plaintiff Jane Doe GS-0003*